IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–02080–KMT

VONNA GRANTHAM,

    Plaintiff/Counter-Defendant

v.

SSC COLORADO SPRINGS CEDARWOOD OPERATING COMPANY LLC d/b/a Cedarwood Health Care Center,

    Defendant/Counter-Plaintiff

---

## ORDER

---

This matter is before the court on Plaintiff's "Motion to Amend Complaint Pursuant to F.R.C.P. 15(a)." (["Motion"], Doc. No. 53.) Defendant has responded in opposition to Plaintiff's motion, and Plaintiff has replied. (["Response"], Doc. No. 54; ["Reply"], Doc. No. 55.)

### STATEMENT OF THE CASE

Plaintiff Vonna Grantham brings this lawsuit against her former employer, Defendant SSC Colorado Springs Cedarwood Operating Company d/b/a Cedarwood Health Care Center, alleging violations of the Age Discrimination in Employment Act of 1967 ["ADEA"], 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12101, *et seq.*. (["Complaint"], Doc. No. 1.)

Plaintiff, who is sixty-seven years old, is said to suffer from "severe left knee tricompartmental degenerative disease," stemming from a work-related injury. (*Id.* at ¶¶ 6-7, 11.) In August 2016, Plaintiff's doctor reportedly "medically restricted [her] from lifting over 20 pounds," because of her condition. (*Id.* at ¶¶ 8, 11, 13.) At that time, Plaintiff was employed by Defendant.[1] (*See id.* at ¶¶ 12-13.)

According to the Complaint, on September 3, 2016, Plaintiff informed her supervisor, Ms. Waters, of her medical prognosis, and requested "assign[ment] to a position which did not require her to exceed her lifting restriction." (*Id.* at ¶¶ 13, 17.) Ms. Waters, in response, allegedly "refused to accommodate [Plaintiff]'s disability by assigning her to a different position," and instead, "insisted" that Plaintiff return to work as a "CNA," even though the position would require Plaintiff "to lift patients four or five times a shift." (*Id.* at ¶¶ 14-15, 19.) Plaintiff further alleges that Ms. Waters "took her off the schedule completely after she requested a reasonable accommodation." (*Id.* at ¶ 19.)

Over the next few months, Plaintiff reportedly continued to ask her supervisor for an alternative work assignment, but to no avail. (*Id.* at ¶¶ 17-18, 22, 24.) In addition, Plaintiff alleges that her supervisor refused to let her apply for a receptionist position available with Defendant. (*Id.* at ¶ 25-27.) Plaintiff claims that Defendant ultimately hired a "substantially younger employee" for that position. (*Id.* at ¶ 28.)

Based on these allegations, on December 29, 2016, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission

---

[1] The Complaint does not allege Plaintiff's job title, or the precise nature of her employment with Defendant.

["EEOC"]. (*Id.* at ¶ 3.) After receiving notice of her right to sue, Plaintiff thereafter commenced this lawsuit, on August 15, 2018, asserting claims against Defendant for age and disability discrimination. (*Id.* at ¶¶ 4-5, 30-44.) Plaintiff seeks monetary damages, as well as injunctive relief. (*Id.* at 6.)

On September 23, 2019, Plaintiff filed a motion for leave to amend her complaint, asking to add SavaSeniorCare Administrative Services, LLC ["Sava"] as a defendant.[2] (Mot. 1.) Plaintiff argues that she should be allowed to amend her complaint, under Federal Rule of Civil Procedure 15(a)(2), because, at all times relevant to her claims, Sava was her "joint employer." (*Id.* at 2.) In addition, Plaintiff contends that Defendant "has gone to great lengths to conceal the identities of the persons or entities who made the decisions not to accommodate [Plaintiff]'s disability." (*Id.* at 3.) She claims to have only recently identified Sava as an entity "whose employees directed the actions of" Defendant.[3] (*Id.* at 3-4.)

The proposed Amended Complaint, attached as an exhibit to Plaintiff's motion, does add Sava as a defendant, but includes no new causes of action or requests for relief. (["Proposed Amended Complaint"], Mot. Ex. 9.) In the proposed Amended Complaint, Plaintiff alleges that

---

[2] In the caption of the proposed Amended Complaint, Plaintiff lists the new Defendant as "Sava SeniorCare." (Mot. Ex. 9 at 1.) However, within the body of the proposed pleading, the entity is repeatedly referred to as "SavaSeniorCare." (*Id.* at ¶¶ 10, 32-38.) In its Response, Defendant likewise refers to the entity as "SavaSeniorCare." (Resp. 1.) But in interrogatory responses, the entity is, once again, identified as "Sava SeniorCare." (Reply Ex. 1 at 3-4.) Although the insertion of a space between "Sava" and "SeniorCare" is likely a distinction without a difference, this contradiction and inconsistency in spelling should be eliminated, and the correct spelling should be utilized in any future court filings. For now, the court will refer to the entity as "SavaSeniorCare," given that this spelling appears more frequently in the parties' documents.

[3] The parties do not address whether the "SSC" in the name of Defendant SSC Colorado Springs Cedarwood Operating Company d/b/a Cedarwood Health Care Center is an abbreviation for SavaSeniorCare. However, such an assumption is a logical inference.

Sava "directed and controlled" the "terms and conditions" of her employment with Defendant. (*Id.* at ¶ 32.) Plaintiff alleges, specifically, that Sava "published and implemented" Defendant's "policies and practices for accommodating disabilities;" that it "determined" whether Defendant's employees would "be accommodated with light duty positions;" and that it "performed significant human resources functions" for Defendant, including "promulgating work rules and maintaining personnel records for employees." (*Id.* at ¶¶ 33-34, 36.) Plaintiff further alleges, in the proposed pleading, that Sava was the "decision maker[]" with respect to the denial of her requests for disability accommodations and for "alternative employment." (*Id.* at ¶ 38.) In addition, Plaintiff alleges that her employment with Defendant was "involuntar[ily] terminat[ed]" by Sava, on January 9, 2019. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a), which applies here,[4] provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties." *Minter v. Prime Equip.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted). Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S.*

---

[4] Plaintiff initially filed her motion for leave to amend on September 20, 2019, the date on which any amended pleadings were due. (Doc. No. 50; *see* Doc. No. 47 at 10.) However, the motion was stricken, on September 23, 2019, for failure to comply with Local Rule 15.1(b), and she filed the present motion that same day. (Doc. No. 52-53.) Because Plaintiff's initial motion was timely filed, the Rule 15(a) standard applies. *See* Fed. R. Civ. P. 15(a), 16(b).

*West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.").

## ANALYSIS

Defendant opposes Plaintiff's motion to amend on three grounds. (Resp. 1.) First, Defendant argues that the proposed amendment would be futile, because Plaintiff failed to exhaust her administrative remedies with respect to Sava. (*Id.* at 3-5.) Specifically, Defendant contends that Plaintiff neglected to file an EEOC charge of discrimination against Sava before initiating this lawsuit. (*Id.* at 4.) In addition, Defendant argues that Plaintiff's motion is the product of undue delay, because Plaintiff "has known of the alleged factual basis for adding Sava for over three years." (*Id.* at 5-7.) Finally, Defendant argues that it would be unduly prejudiced, both strategically and financially, by the addition of another party to this lawsuit at this stage in the litigation. (*Id.* at 8-9.)

### A.  Futility

Defendant argues, first, that Plaintiff failed to exhaust her administrative remedies as to Sava, and that therefore, the proposed addition of that entity to this lawsuit would be futile. (*Id.* at 3-5.) "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (quoting *Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015)).

In the Tenth Circuit, a plaintiff must exhaust her administrative remedies prior to bringing an employment discrimination action in federal court. *See Smith v. Cheyenne Ret. Investors L.P.*, 904 F.3d 1159, 1163-64 (explaining that a failure to exhaust is an affirmative

defense, rather than a jurisdictional bar to recovery). To do so, a plaintiff must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful conduct occurred. 42 U.S.C. § 2000e—5(f)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(1); *Castaldo v. Denver Pub. Sch.*, 276 F. App'x 839, 841 (10th Cir. 2008). The EEOC charge must name each defendant against whom a plaintiff intends to pursue claims. *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir. 1999); *see also* 42 U.S.C. § 2000e—5(f)(1) ("[A] civil action may be brought against the responded named in the [EEOC] charge[.]"); 29 U.S.C. § 626(d)(2) ("[T]he Commission shall promptly notify all persons named in such charge as prospective defendants[.]").

Here, Defendant argues that Plaintiff's claims against Sava are unexhausted, and therefore subject to dismissal, because Plaintiff did not name Sava in her EEOC charge. (Resp. 4-5.) However, the omission of Sava's name is not necessarily fatal to Plaintiff's claims against that entity. Indeed, the Tenth Circuit has recognized certain "narrow exceptions" to the requirement that each defendant be specifically named in an EEOC charge: (1) "where the defendant was informally referred to in the body of the charge;" or (2) "where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of [the ADA and ADEA] that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).

Plaintiff, for her part, appears to concede that her EEOC charge of discrimination neither specifically identifies, nor informally references, Sava. (*See* Reply 1-7.) She argues, however, that an adequate "identity of interest" exists between Defendant and Sava, such that Sava did not need to be named in the EEOC charge. (Reply 2-4.) Plaintiff argues, specifically, that

6

Defendant and Sava "are so intertwined" that they should be "treated as a single employer." (*Id.* at 3-4.)

Under a single employer theory, if two entities are shown to be so interrelated to effectively constitute an "integrated enterprise," those entities are deemed to possess "identity of interest." *See Knowlton*, 189 F.3d at 1185 ("When the court has already determined that the entities are so entwined as to justify holding the parent corporation liable for the subsidiary's actions, it would be anomalous to not also conclude that the parent had sufficient identity of interest to have been notified of the suit."); *Jones v. Standard Consulting, Standard Testing & Eng'g Co.*, No. CIV-16-1020-R, 2017 WL 1148685, at *2 n.3 (W.D. Okla. March 24, 2017) (reading *Knowlton* to carve out a distinct "single employer" exception); *Simmons v. Harman-Kim, Inc.*, No. 2:06cv834, 2008 WL 2575649, at *4 (D. Utah June 26, 2008) ("[S]hould Plaintiff be able to demonstrate that Defendant and HMC constitute an integrated enterprise, it would be unnecessary for the court to determine whether an identity of interests exists."). "[F]our factors [are relevant] in considering whether two nominally separate entities constitute an integrated enterprise or single employer: (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1322 (10th Cir. 2004).

In the proposed Amended Complaint, Plaintiff alleges the following facts to support her contention that Defendant and Sava should be treated as a single employer for purposes of liability: (1) Sava and its employees promulgated Defendant's workplace policies, including those pertaining to disability accommodations, as well as all employee handbooks, agreements, alternative dispute resolution policies, and codes of ethics; (2) Sava handles all personnel records

for Defendant; and (3) Sava exercises supervisory control over Defendant's employment decisions, including those decisions pertaining to disability accommodations and termination of employment. (Proposed Am. Compl. ¶¶ 33-38.) These allegations, taken as true, and viewed in the light most favorable to Plaintiff, are enough to plausibly allege an "identity of interest" between Defendant and Sava. *See Equal Emp't Opportunity Comm'n v. Smokin' Spuds, Inc.*, No. 14-cv-02206-REB-KMT, 2015 WL 1756813, at *2 (D. Colo. April 14, 2015) (finding allegations that two entities "operate[d] as a single (integrated) and/or joint employer," that they used the same trade name, and that one entity owned "one hundred percent" of the other entity, to be sufficient to show "identity of interest"); *Simmons*, 2008 WL 2575649, at *6 ("Plaintiff has sufficiently alleged that the operations of HMC and Defendant are interrelated as HMC provides accounting, payroll, employee benefits services, and other consulting and training services to Defendant.").

On this record, then, it is not evident that Plaintiff's proposed claims against Sava would be subject to outright dismissal for failure to exhaust administrative remedies. *See Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 511-12 (D. Kan. 2007) (rejecting the argument that amendment would be futile, even though the proposed additional defendants were not named in the plaintiff's EEOC charge, because the named defendant and the proposed defendants were alleged to be "an integrated enterprise or a joint employer"). Accordingly, denial of Plaintiff's motion, based on futility, would be inappropriate.

### B. Undue Delay

Defendant next argues that Plaintiff's motion should be denied, because it was untimely. (Resp. 5-7.) Untimeliness, or "undue delay," is a sufficient reason for denying leave to amend.

8

*Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993); *see USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004) ("[D]elay alone is an insufficient ground to deny leave to amend. At some point, however, delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party."). In determining whether a delay was "undue," the length of the delay, as well as the reason for its occurrence, are relevant. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205-06 (10th Cir. 2006).

Here, Defendant has failed to show that Plaintiff has been dilatory in seeking leave to amend her pleadings. Indeed, Plaintiff filed her EEOC charge of discrimination on December 29, 2016. (Compl. ¶ 3.) The EEOC did not provide Plaintiff with a notice of right to sue until May 17, 2018. (*Id.* at ¶ 4.) Plaintiff filed her initial complaint three months later, on August 15, 2018. (*Id.* at ¶ 5.) The deadline for joining additional parties and for amending the pleadings was September 20, 2019. (Doc. No. 47 at 10.) Plaintiff sought leave to amend her pleadings that same day. (Doc. No. 50.)

Defendant argues, nevertheless, that Plaintiff's request to add Sava to this lawsuit is untimely, because she has known of Sava's existence "for at least three years." (Resp. 7.) However, Plaintiff has produced evidence to show that she only recently learned, through discovery, the full extent of Sava's relationship with Defendant. (Reply 7-8, Ex. 1.) Specifically, Plaintiff has submitted Defendant's July 23, 2019 interrogatory responses, from which she reportedly gleaned that Sava operated a shared human resource department with Defendant, that it maintained Plaintiff's personnel records, and that it exercised decision-making as to Plaintiff's employment. (*Id.*) On this record, then, the denial of Plaintiff's motion, based on undue delay, is unwarranted. *See Simmons*, 2008 WL 2575649, at *2 (concluding a plaintiff's

motion to amend to add another defendant was not untimely, even though filed nine months after the scheduling order deadline, because the plaintiff only learned of the proposed defendant's relationship to her employer through discovery).

### C.  Undue Prejudice

Finally, Defendant contends that it will suffer undue prejudice if Plaintiff is permitted to amend her complaint.  (Resp. 8-9.)  "Courts typically find prejudice only when the amendment unfairly affects the defendant[] in terms of preparing [its] defense to the amendment." *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).  Prejudice occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.*

Here, Defendant argues that it would be prejudiced by Plaintiff's proposed amendment, because "discovery is nearly half complete."  (Resp. 8.)  In addition, Defendant argues that, if the amendment is allowed, it will be forced to "expend considerable resources" to respond to "baseless" claims against Sava.  (*Id.*)  However, the proposed Amended Complaint involves the same claims and underlying factual allegations.  Thus, it is not evident that additional discovery would be particularly burdensome on the parties.  Further, to the extent Defendant argues that the amendment would adversely affect the discovery deadlines in this case, the court will entertain any requests for extensions of those deadlines upon a showing of good cause.  Therefore, Defendant has not shown that undue prejudice will result from the amendment.

Accordingly, it is

**ORDERED** that Plaintiff's "Motion to Amend Complaint Pursuant to F.R.C.P. 15(a)" (Doc. No. 53) is **GRANTED**. Plaintiff is **ORDERED** to file an amended complaint **no later than Monday, November 4, 2019**.

This 31st day of October, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge